KEYSTONE, The (TWIBELL v.). See Case No. 14,285.

---

## Case No. 7,751.

KEYSTONE BRIDGE CO. v. PHOENIX IRON CO. et al.

[5 Fish. Pat. Cas. 468; [1] 9 Phila. 374; 1 O. G. 471; 29 Leg. Int. 125.]

Circuit Court, E. D. Pennsylvania. April 1, 1872.[2]

PATENTS—TRUSS BRIDGES—LOWER CHORDS— CHORD BARS.

1. Where the form of the lower chords in truss-bridges constituted the essence of the claim of the patent, the bars being therein described as "wide and thin," and defendant had only made bars round in section: *Held*, that complainant was not entitled to recover.

2. The claim of the patent being for "the use," in truss-bridges, of chord-bars constructed in the manner described, the method of making the same being disclaimed, and it appearing that the defendants had only made and sold chord-bars: *Held*, that they only did what they had a legal right to do, and did not thereby assume any responsibility for the wrongful acts of others.

[Cited in Lane v. Park, 49 Fed. 458.]

Final hearing on pleadings and proofs.

Suit brought [by the Keystone Bridge Company against the Phoenix Iron Company, Samuel J. Reeves, and George H. Sellers] on two several letters patent, for improvements in iron truss-bridges, one granted to J. H. Linville, assignor to himself and J. L. Piper, January 14, 1862, and the other to the said Linville and Piper, as joint inventors, October 31, 1865.

Chas. B. Collier and Theo. Cuyler, for complainant.

R. C. McMurtrie, F. Sheppard, and Geo. Harding, for defendants.

McKENNAN, Circuit Judge. The opinion just read in the case of Reeves v. Keystone Bridge Co. [Case No. 11,660], renders it unnecessary to consider the alleged infringement of the second claim of Linville's patent of 1862, and the first claim of the patent of Linville and Piper of 1865. The only claims of these patents which it is necessary to notice relate to the lower chord-bars of truss-bridge structures. It is in the use of these bars that the infringement is alleged to consist.

The first claim of the patent of 1862 is for the construction of the lower chords of truss-bridges of series of eye-bars, wide and thin, drilled eye-bars, applied on edge between ribs on the bottom of the posts, etc. The form of the bars is of the essence of the claim (wide and thin bars only are claimed), and, as the only proof of infringement is that the respondents made eye-bars round in section, which were used in the La Salle bridge to perform the functions of tension-chords, the

---

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

[2] [Affirmed in 95 U. S. 274.]

patent of 1862 may be dismissed from further consideration.

The third claim in the patent of 1865 is for "the use, for the lower chords of truss-frames, of wide and thin rolled bars, with enlarged ends formed by upsetting the iron when heated by compression into molds of the required shape." As the respondents are proved to have made only round chord-bars, which were used in the La Salle structure, it may well be doubted that they have infringed this claim; and especially as they are not employed or adapted to give vertical support to the roadway, which is an important function of the complainant's lower chords, and is the reason of their peculiar conformation. But, waiving this and assuming that the enlarged ends of the respondents' chord-bars are formed as described in the claim, it is not to be doubted that the patent is limited to the use of the chords in bridge structures. This is distinctly set forth in the specification, where it is stated that "we do not claim the upsetting of bars in the manner described, nor any peculiar mode of performing the operation, but merely the use of chord-bars for bridges, the ties of which are thus formed so as to give additional strength to the bar where it is so much needed." The exclusive right to make chord-bars in any mode is distinctly disclaimed; only their use, when formed as described, is appropriated by the patentees and forbidden to others. They, in effect, declare that any one may lawfully make the bars, and that no encroachment upon their rights is committed until the bars are used by being put into a bridge.

Now, the respondents are iron manufacturers, and it is shown that the bridge at La Salle, Illinois, was built by Kellogg & Clark, who obtained the iron for it from the respondents, and that the bottom chords used in it were like those claimed by the complainants. This is all the proof of infringement, and I think it falls far short of fixing any accountability upon the respondents. They made the bars, but did not use them—Kellogg & Clark did that. They did only what they had a legal right to do, and did not thereby assume any responsibility for the wrongful acts, or become involved in the unlawful purposes of others. Nor can this responsibility be imposed upon them, because privity with a wrong-doer is not necessarily to be inferred from the exercise of a legal right.

My attention has been called to the opinion of Judge Woodruff in the case of Wallace v. Holmes [Case No. 17,100]. The case is a peculiar one. It involved the infringement of a patent for an improved lamp-burner, in combination with a chimney, where the respondents made and sold the burner alone, leaving the purchaser to supply the chimney, without which such burner is useless; and

it was held that all who were engaged in the manufacture of the different parts of the combination, and using it thereafter, were infringers, for the reason that "all are tort feasors engaged in a common purpose to infringe the patent, and actually, by their concerted action, producing that result." Now, can it be doubted that, if the respondents there had been licensed by the patentee to make and sell his improved burner, and this was all they did, the result would have been different?—and yet this is substantially the attitude of the respondents here. By clear implication, the patentees have authorized the respondents to make and sell the chord-bars described in their patent, and have declared that only those who use them as lower chords in bridge construction can be called to account for infringement. Having, therefore, exercised the conceded rights of manufacturers only, the respondents cannot, by any strained inferences, be implicated in the wrongful acts of others. The bill must, therefore, be dismissed, with costs.

[NOTE. For another case involving this patent, see Keystone Bridge Co. v. Phoenix Iron Co., 95 U. S. 274.

[This case was appealed by the complainants to the supreme court, and then affirmed. Mr. Justice Bradley delivering the opinion of the court. Upon the alleged infringement of the first claim of the patent of 1862, the learned justice remarked that "words cannot show more plainly that the claim of the invention does not extend to any other eye-bars or chords than such as are made wide and thin, and applied on edge. As those constructed by the defendant are cylindrical in form, only flattened at the eye for insertion between the ribs or projections of the post, it is plain that no infringement of this claim of the patent has been committed." Upon the question of the third claim in the patent of 1865, the learned justice holds that the two processes are not sufficiently alike for the defendant's to be considered an infringement, unless the claim of the complainant's patent was for the process of forming the widened ends. The learned justice then goes on to show that the claim is not for this process, and says: "If the patentees have not claimed the whole of their invention, and the omission has been the result of inadvertence, they should have sought to correct the error by a surrender of their patent, and an application for a reissue." 95 U. S. 274.

[The case of Reeves v. Keystone Bridge Co., referred to in the opinion of the court above, was a cross action brought by the defendants in case above, against the plaintiffs. It was for an alleged infringement of letters patent granted Reeves, June 17, 1862, for an "improvement in the construction of columns, shafts, braces," etc. The two cases involved substantially the same questions, and were decided at the same time. In this last case the court held that the Keystone Bridge Company had infringed the patent of the complainant, and a decree for perpetual injunction and for an account and costs was entered. Case No. 11,600. Subsequently the defendants were permitted to file a supplemental bill, setting up newly-discovered evidence. Case No. 11,661.]

KEYSTONE BRIDGE CO. (REEVES v.). See Cases Nos. 11,660 and 11,661.